(Superior Court of Cincinnati.)
Special Term—1899.

## IN RE DANIEL BROWN, Auditor.

---

By section 1765a, of the Revised Statutes, it is provided that in cities of the first grade and first class the auditor shall at the end of each fiscal year or oftener if required by the board of legislation, and also upon the death, resignation, removal or expiration of the term of any officer of the city audit the accounts of such officer before making the final statement of account, giving notice of such audit to the officer and his sureties: and if such officers shall be found to be indebted to such city, a statement of the account showing the amount of the indebtedness shall be at once filed with the clerk of the superior court of such city, and such account shall be placed by such clerk upon the docket of said court as a pending action, summons to be served as in other civil actions. Either such city or any person answering may demand a jury, and the court shall proceed to judgment therein as in any other civil action. From the time of the filing of such account, the amount thereof shall be a lien upon all the real estate of the officer thereby shown to be indebted to such city and upon that of his sureties. Held:

1. That even if the provision which makes the report of the auditor a lien upon the property of the officer and his sureties to the amount that the officer is reported to be in default is unconstitutional (a question upon which no opinion is expressed), yet such infirmity in the act would not be sufficient to destroy the remainder of it.

2. Such act does not confer upon the auditor the exercise of judicial power.

3. The act is not unconstitutional because it fails to require the auditor to verify his report before filing it.

---

SMITH, J.

These cases, which are independent of one another, came before me upon motions to dismiss, upon the ground that the law under which they are instituted is unconstitutional.

Paragraph 7, of section 1765a, of the Revised Statutes of the state, which relates to the duties of the city auditor in cities of the first grade of the first class, is as follows:

"The auditor shall, at the end of each fiscal year, or oftener if required by the board of legislation, and also upon the death, resignation or removal or expiration of the term of any officer of the audit, examine and settle the accounts of such officer before making the final statement of account. The auditor shall cause notice of the audit to be given to the officer or his legal representatives, and to his sureties or their legal representatives, which notice shall be by copy served personally or at residence or place of business, or in case the person to be served be a non-resident, by a publication of a copy of such notice for ten days in a newspaper published and of general circulation in such city; and if so desired by such officer or his legal representatives, or any other interested person, an opportunity shall be given for hearing; and if such officers shall be found to be indebted to such city, a statement of the account showing the amount of such indebtedness shall be at once filed with the clerk of the superior court of such city, if there be one, otherwise, with the clerk of the common pleas court in the county in which such city is situated, together with a copy of the notice above provided for, verified by affidavit showing the service of the same, and such account shall be placed by such clerk upon the docket of said court as a pending action, summons to be served therein as in other civil actions, and said account to be prima facie evidence of the amount of such indebtedness. If any person or persons affected thereby shall be dissatisfied with such settlement and account as filed, he or they may as in any other civil action, appear and defend by filing an answer thereto, verified by his or their oath, setting up defense or exceptions to such account. At the earliest possible day allowed by law, the court shall proceed to hear said cause upon said account as filed, and the answer thereto and the testi-

mony, giving the same precedence over other cases. Either such city or any person so answering may demand a jury and the court shall proceed to judgment therein as in any other civil action. From the time of the filing of such account the amount thereof shall be a lien upon all the real estate of the officer thereby shown to be indebted to such city and upon that of his sureties, who shall also be named in said account not exceeding as to such sureties the amount of the bond on which they, are liable."

In pursuance of the duties enjoined by this paragraph H. P. Boyden, the auditor of the city of Cincinnati, soon after the beginning of his term proceeded to "audit, examine and settle the accounts" of D. W. Brown, his predecessor in office, and as a result of such audit and examination has filed in this court a report in which it is stated that the said D. W. Brown is indebted to said city in the sum of $10,279.95.

Subsequently, upon the expiration of the term of Robert Schmidt as wharf master of said city, said H. P. Boyden as auditor of said city, and as provided in said paragraph 7, proceeded to "audit, examine and settle the accounts" of said Robert Schmidt, and as a result of said audit and examination has filed a report in this court in which it is stated that said Robert Schmidt is indebted to said city in the sum of $3,790.88.

Immediately upon the filing of thees reports said D. W. Brown and Robert Schmidt, together with the sureties upon their bonds, were served with summons. The sureties for D. W. Brown are John Zumstein, Charles Fleischmann, and Powell Crosley ; and for Robert Schmidt are, Noah McKitrick, C. H. Barber, A. E. Windeler, Scott Bonham and Clinton Crane. The parties defendant to both proceedings have filed motions to dismiss the proceedings with the exception of the executors of Charles Fleischman, who have filed a demurrer to the proceeding against them.

With the exception of the executors of Charles Fleischman, to whose objection I shall hereafter make special reference, it is admitted by the parties to both proceedings, that the proceedings are entirely regular so far as following the requirements of the statute are concerned, but it is contended that the statute is unconstitutional and therefore the proceedings are null and void and must be dismissed.

The main contention of the defendants is that the feature of the law which provides that:

"From the time of the filing of such account the amount thereof shall be a lien upon all the real estate of the officer thereby shown to be indebted to such city and upon that of his sureties, who shall also be named in said account, not exceeding as to such sureties the amount of the bond upon which they are liable," violates act 2, section 26 of the constitution of the state which requires that, "all laws of a general nature shall have a uniform operation throughout the state" for the reason that such provision gives a preference by way of lien upon the property of the defendants over that possessed by plaintiffs in other actions instituted in he courts and that the matter of liens arising from the filing of a suit is a subject of a general nature and the laws with respect to the same must have a uniform operation by appling to all actions.

The arguments attacking this feature of the law evidence research, ability and ingenuity upon the part of the numerous counsel representing the defendants, but I do not regard the question as having any particular bearing upon the motions before me, for the reason that even if such provision of the law is unconstitutional, nevertheless the other provisions of the law are not so dependent upon it that they must fall with it.

The principle is well settled in this state, as declared in: Railroad v. Commissioners, 31 Ohio St., 343, that: "A part of a statute may be void for want of conformity to the constitution and the remainder valid. Whether or not the infirmity that avoids a part affects the entire act depends upon the connection and dependence on each other of its various provisions. Where they are so inseparably con-

nected in subject matter and so relate to each other as to give rise to a presumption that a part would not have been enacted without the whole the entire act is void. But where no such connection or dependence exists, that part of the statute not in itself in conflict with any constitutional provision is as valid as if independently enacted.''

To the same effect, see: Bowles v. The State, 37 Ohio St., 35; State v. Brewster, 39 Ohio St., 653, 659; State v. Frame, 39 Ohio St., 411; Treasurer v. Bank, 47 Ohio St., 503; and City of Cincinnati v. Cincinnati Street Railway Co., 31 W. L. B., 311, affirmed by supreme court.

It is urged by counsel for the defendants, however, that the main purpose of the law was to give the city a lien upon the real estate of the principal officer and his sureties and that if this purpose fails because of the constitutional infirmity of the legislation which seeks to establish it, the entire law fails because the legislature could have had no other purpose in its enactment.

I concede that one of the objects sought to be accomplished by the law is found in the provision against which counsel have directed their main attack; indeed, such concession must always be made with respect to any provision found in any law, because the presumption is conclusive that the legislature never enacts a law or a provision thereof without intending to enact it and because it regards its enactment as desirable. But there appears to my mind a very clear and distinct purpose in the enactment of this law aside from that of making the beginning of the proceedings under it a lien upon the property of the defendants, and such purpose to my mind is quite as important of accomplishment as that of fastening a lien upon the property of the defendants, and I must therefore assume that it appeared equally important to the legislature.

It would hardly be contended that if the legislature had supposed it had not the power to make the proceedings alien upon the property of the princip-

al officer and his sureties, that it would not have enacted the first part of the law which declares that: ''The auditor shall, at the end of each fiscal year, or oftener if required by the board of legislation, and also upon the death, resignation or removal, or expiration of the term of any officer of the city, audit, examine and settle the accounts of such officer''; because the grant of such a power which enables the city at any time to know the state of an officer's accounts, and upon the cessation of his service in the office to know that his accounts are correct, is a grant of power so important and necessary that it seems to me idle to say the legislature would not have granted it unless it supposed it had the power to make the proceedings which subsequently follow such an examination revealing an indebtedness to the city a lien upon the property of the principal and his sureties.

But it may be urged that while this proposition is conceded, yet the reasons which support it do not support the remainder of the statute which enables the city auditor to begin proceedings by the filing of his report.

It is true the same reasons do not support the remainder of the statute, but I think other reasons of a very weighty character do support such remainder of the law.

Without the enactment of the remainder of the law the examination and findings of the city auditor would per se have no force or effect; and no action could be maintained in the courts based upon such findings until one of the municipal boards had instructed the corporation counsel to begin an action against the officer and his sureties. This, a board might not feel justified in doing until in some manner it had itself made an investigation of the correctness of the report which, in effect, would be an audit and examination of the accounts of the officer. For such work a municipal board is at best a clumsy instrument or agency, and with the constant and influential opposition which would necessarily arise from the principal and his sureties, on a question as to

whether complicated accounts showed a balance in favor of or against the city, the whole matter would be in danger of becoming engulfed in a whirlpool of conflicting forces and doubts, so that progress forward, in many cases, in all likelihood would never be had.

I am therefore of the opinion that even if the lien feature of the law be stricken from it as unconstitutional, the remainder should stand as subserving an important purpose, which the legislature had in mind, in no way dependent for its accomplishment upon the lien feature of the law.

I do not intend to be understood as expressing the opinion that the lien feature of the law is unconstitutional. I simply do not find it necessary to consider the question or to form or express an opinion upon it.

Another objection to the statute is that it confers upon the auditor the exercise of judicial power. But such is not the effect of the act. It requires the auditor to make an examination of accounts, and requires him to give notice of such contemplated examination to the officer and his sureties who are not required to be present but are given the privilege of being heard. The examination, if adverse to the officer, does not deprive him of a hearing in court or of his right to a trial by jury but simply serves as the basis of the action, which is begun against him by the filing of the report.

This objection may be dismissed with a citation from the case of: De-Camp v. Archibald, 50 Ohio S., 625, in which it is declared that: "The term 'judicial power', as used in the constitution, is not capable of a precise definition. It is included in the power to hear and determine, but does not exhaust the power. That it embraces the hearing and determination of all suits and actions whether public or private, there can be no doubt. But we think that it is equally clear that it does not, necessarily, include the power to hear and determine matter that is not in the nature of suit or action between parties. Power to hear and determine matters more or less directly affecting public and private rights, is conferred upon and exercised by administrative and executive officers. But this has not been held to affect the validity of statutes by which such powers are conferred. State ex rel. v. Hawkins, 44 Ohio St., 98-109."

Another objection suggested, but not urged, is that this statute does not require verification of the report which serves as a petition in the case, and that the making of this exception to the general rule requiring verification of pleadings is a violation of the constitutional provision that all laws of a general nature shall have a uniform operation. I do not think the objection requires extended notice. The fact that the officer who files it is under oath to faithfully discharge the duties of his office, coupled with the fact that the report is the result of an examination made by him, with the right to all concerned to be heard before such result is reported, would seem to be sufficient ground to dispense with a verification to the effect that the report is believed by the officer to be true.

The statute operates upon all auditors of all cities of the first class and the legislation being based upon the peculiar organization and conditions of such city is a proper classification. State ex rel. v. Cincinnati, 52 Ohio St., 448.

It is significant, too, that if such a provision were unconstitutional, that no question has ever been raised with respect to the validity of section 213, Revised Statutes, which declares that: "It is not necessary to verify the pleadings on the part of the state or any officer thereof in any action, writ or proceeding."

If a single litigant, as the state, may be relieved from the verification of all of its pleadings, it is difficult to see why cities of the first grade and first class may not be relieved when the petition is filed under such circumstances as to make verification a mere idle ceremony.

For the reasons above stated, it is my opinion that the motions to dismiss these proceedings should be overruled.

The summons in the Brown case was issued, not against Charles Fleischman, but against his executors. But as the death of Mr. Fleichman has not been suggested upon the record in the proceeding against him and revived against his estate, such a summons must be held to be served upon persons not parties to the proceeding. The demurrer filed by them should therefore be sustained, with leave to the city to take such further steps in the matter as shall be deemed advisable.

Ellis G. Kinkead, Wade Ellis, Corporation Counsel, for the City of Cincinnati.

Frank M. Coppock, Fred Hertenstein, Frank H. Kemper, Willis M. Kemper, C. T. Durrant, Louis Kramer, for the motions.